**Regina L. BLATION, Petitioner,**

**v.**

**U.S. PIONEER and the Workers' Compensation Court, Respondents.**

**No. 80694.**

Court of Appeals of Oklahoma, Division No. 1.

May 11, 1993.

Karen J. Leonard, Don L. Wyatt, Wyatt, Austin & Associates, Ada, for petitioner.

Linda S. Foreman, State Insurance Fund, Oklahoma City, for respondents.

## MEMORANDUM OPINION

GARRETT, Judge:

Petitioner Regina L. Blation (Claimant) filed her Form 3 in the workers' Compensation Court, alleging she sustained an accidental injury arising out of and in the course of her employment with Respondent U.S. Pioneer (Employer). She alleged she sustained an injury on January 3, 1992, in the nature of a sprain and strain to her right knee and back while lifting parts weighing 50 to 75 pounds from a concrete floor to a forklift. Employer denied that claimant sustained an accidental injury arising out of and in the course of her employment, raising the affirmative defense of pre-existing condition.

On November 13, 1992, the trial court entered its order denying the claim. The court found Claimant "did not sustain an accidental personal injury arising out of and in the course of [her] ... employment with the above named respondent, as alleged in the claim for compensation filed herein." This review proceeding followed.

Claimant testified she was lifting brass parts weighing about 50 to 100 pounds to move them to a forklift. She stated:

> I was holding it in my hands, and I was bending over, I lost control of it, and my back started penetrating, I couldn't hold it up anymore. It fell down to my knees and onto the floor.

She said Employer's owner was present and came to her aid. She stated he screamed for the supervisor who ran over to her and suggested they call an ambulance. They escorted her to a table to sit down. Claimant stated the owner and supervisor then conferred with each other and suggested instead that she call someone to take her to the hospital since it was late in the day. She stated they said they would get her an accident report to fill out, but they never talked to her again after that point. She testified they also asked her if she had ever been hurt before, and she answered yes. She was then told to go to the doctor, bring her report in, if anything was wrong, and they would take care of her bill.

She stated she got a ride to a clinic and saw Dr. E., who gave her medicine for her knee and back and wrapped her leg. She also received some arthritis injections at that time. She was referred to Dr. R. at the same clinic who started her on therapy immediately. She stated that she was bedridden from April to August and could not continue to go to therapy. She began seeing Dr. M., a bone specialist, in August, who did arthroscopic surgery on her right knee in September. She is still under the care of Dr. R. and Dr. M.

She stated that she continues to have pain on the right side of her back, upper and lower, and that she still has pain in the area around the artificial kneecap which she received in the arthroscopic surgery. She stated she has not been able to go back to work for Employer or anywhere else since the accident. She had worked for Employer only one month at the time of this accident.

She testified that in 1989 she suffered an injury while working at Furr's Cafeteria. She stated she had no surgery as a result of the 1989 accident to her neck, back, legs or any other parts of her body, and that she recovered from the accident to the extent she could work a full day for Employer. She testified she was having no problems with her back or legs at the time of the accident.

On cross examination, Claimant stated her injury at Furr's was settled on a joint petition settlement. She did not work from July, 1990, until she went to work for Employer December 9, 1991, except for a couple of jobs held for less than a week each. She stated on redirect examination that she currently wears a brace on each knee.

Employer's owner, Charles Lester Lapidus (Lapidus), testified on behalf of Employer. He stated that on the date of the accident he walked out into the shop where Claimant was working at a spot welding machine. He said she asked him if he would come over to where she was working which he did. He testified:

> And she said, 'You know, I hurt myself on my previous job, and I'm in pain, and I find it difficult to do my job. I didn't

hurt myself here, but on my previous job I really hurt myself, and I can't do my job right now.'

And she said, 'you know, I never hurt myself here. This was just from my previous job.'

Lapidus testified that if she had reported an injury working for Employer, he would have filled out an accident report. He said the part she was working on was a "little brass enclosure" which weighs under a pound. On cross examination, Lapidus testified he completed a Form 2, Employer's First Notice of Injury, on March 3, 1992, at the request of the State Insurance Fund. He testified this was the first notice Employer received of this claim. He stated Claimant did not work after the date of that conversation because "[s]he falsified her employment application." He stated she indicated on the application that she was fit to work but then later told him she could not do the job because of a previous job-related injury. When asked if he fired her that day based upon falsification of information, he stated: "As far as I was concerned as of that day, when she left, and I looked at her personnel record." [1] He stated he did not advise her she was terminated, but that her job is not still available for her. He admitted receiving a note from a doctor, which he placed in Claimant's personnel file, that she could return to work on January 14, 1992.

Claimant's supervisor, Robert Gibson (Gibson), also testified on behalf of Employer. He stated he was present at work on January 3, 1992. He said late that afternoon, Lapidus called him over to the spot weld station, where Claimant was working, and asked Claimant to repeat what she had just told him. Gibson testified: "Well, she says, 'I hurt my back at another job,' and it was bothering her right then, and she couldn't work any more." He said it was about two o'clock in the afternoon, and they told her to go home. He testified she never indicated to anyone working for Employer that she injured her-

self at this place of employment, but that she hurt herself at another job. He agreed with Lapidus the part she was working on weighed approximately one pound. Although Gibson testified he did not know the exact date the doctor's note was brought in, he and Lapidus had already met regarding the alleged application falsification and had terminated her employment.

He stated Claimant had told him her back was hurting so much she couldn't operate the foot switch on the spot welder. He testified the foot switch takes the same amount of pressure as stepping on a car gas pedal.

■ Claimant contends that there is no medical evidence showing her condition was pre-existing. The written report of Employer's medical expert, Dr. G., contains the following:

The injury occurred January 3, 1992. The cause of the injury, *by history*, was from lifting. The injury, *by history*, appears work related. (Emphasis added).

However, in his report Dr. G. also stated that he is unable to comment on her period of temporary total disability. He gave the opinion that she is not temporarily totally disabled and that she sustained no permanent impairment to her right knee or back due to this injury. In summary, Dr. G. wrote in his report:

By history, Ms. Blation was injured after lifting a large part.

She has received conservative treatment and has continued complaints.

No further medical treatment is indicated.

■ Whether an injury arises out of and in the course of a claimant's employment is an issue of fact to be determined by the Workers' Compensation Court, and is not to be determined on review proceedings where there is any competent evidence to support the order subject to review. *Stiles v. Okla. Tax Commission*, 752 P.2d 800 (Okl.1987), citing *Thomas v. Keith Hensel*

---

**1.** The question on the job application to which Lapidus refers is: "Do you have any physical limitation precluding you from performing any work in which you may be considered?" She answered the question "no".

*Optical Labs,* 653 P.2d 201 (Okl.1982); *Pearl v. Associated Milk Producers,* 581 P.2d 894 (Okl.1978). The credibility of the witnesses was an issue for the trial court's determination. Apparently, the trial court found Employer's evidence more credible than Claimant's. Employer's evidence supports the finding that Claimant did not sustain an accidental personal injury arising out of and in the course of her employment with this employer.

 The probative value and weight to be given medical evidence is an issue for the Workers' Compensation Court's determination. See *Department of Public Safety v. Jones,* 578 P.2d 1197 (Okl.1978). Evidence of one expert may be accepted while that of another may be rejected in whole or in part. *Department of Public Safety v. Jones,* supra. Dr. G.'s report did state that Claimant received a work related injury. However, he found no resulting disability. In addition, it is obvious that a doctor's opinion that the injury was work related must of necessity be based upon the history related by a claimant because the doctor did not witness the incident. It is the province of the trial court to determine the weight to be given to the doctor's opinion after considering all of the evidence.

Findings of fact made by the trial court are binding and conclusive in review proceedings before this Court, unless they lack support in competent evidence. *Parks v. Norman Municipal Hospital,* 684 P.2d 548 (Okl.1984). It is only when factual findings lack support in competent evidence that the trial court's decision may be determined to be erroneous as a matter of law. *Parks,* supra. The order is supported by competent evidence.

ORDER SUSTAINED.

ADAMS, P.J., and JONES, J., concur.